T.C. Memo. 2002-310


UNITED STATES TAX COURT



JOYCE E. HASTINGS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent



Docket No. 6565-99.                Filed December 23, 2002.



        R determined a deficiency for P's 1993 taxable
year.  Using the bank deposits method, R reconstructed
P's taxable income for 1993 and determined that P had
unreported income from her sole proprietorship.

        P operated a horse activity in 1993.  Over a
number of years, P incurred substantial losses in such
activity.  In no year did the activity make a profit.
P deducted losses sustained in the horse activity.  R
disallowed these deductions on the ground that the
horse activity was not engaged in for profit within the
meaning of sec. 183, I.R.C.

        <u>Held</u>:  P had unreported taxable income from her
sole proprietorship.

        <u>Held</u>, <u>further</u>, based on all the facts and
circumstances, the horse activity was an activity not
engaged in for profit within the meaning of sec. 183,

I.R.C., and P is not entitled to deduct the losses therefrom.

Held, further, allowing for concessions, R's deficiency determination is upheld.

Held, further, P is liable for the sec. 6651(a)(1), I.R.C., addition to tax for failure timely to file her 1993 income tax return.

Held, further, P is liable for the sec. 6662(a), I.R.C., accuracy-related penalty.


Joyce E. Hastings, pro se.

Michael S. Hensley, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

NIMS, Judge: Respondent determined a Federal income tax deficiency for petitioner's 1993 taxable year of $22,053. Respondent also determined an addition to tax of $5,485 pursuant to section 6651(a)(1) and an accuracy-related penalty of $4,411 pursuant to section 6662(a).

After concessions, the issues remaining for decision are:

(1) Whether petitioner had unreported income from her sole proprietorship, Joyce Hastings, Attorney at Law, as determined by respondent, for the 1993 taxable year;

(2) whether petitioner's horse activity constituted an activity not engaged in for profit within the meaning of section 183, for the 1993 taxable year;

(3) whether petitioner is liable for the section 6651(a)(1) addition to tax for failure timely to file an income tax return for 1993; and

(4) whether petitioner is liable for the section 6662(a) accuracy-related penalty for 1993.

Additional adjustments to petitioner's self-employment taxes and deduction for self-employment taxes are computational in nature and will be resolved by our holdings on the foregoing issues.

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

I.  General Background

Some of the facts have been stipulated and are so found. The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference. At trial, the parties stipulated that, to the extent relevant, the facts contained in Hastings v. Commissioner, T.C. Memo. 1999-167, may be incorporated by reference in this proceeding. Where relevant, the findings of fact in Hastings are incorporated herein by this reference. At the time the petition was filed in this case, petitioner resided in Julian, California.

Petitioner did not timely file Form 1040, U.S. Individual Income Tax Return, for taxable year 1993. Petitioner requested an extension of time to file her 1993 Federal income tax return and paid $300 therewith. Respondent extended the filing date for petitioner's 1993 Federal income tax return from April 15, 1994 until August 15, 1994. On February 16, 1996, petitioner filed her 1993 Federal income tax return. On December 17, 1997, the IRS began its examination of petitioner's 1993 taxable year.

II. Unreported Income

During 1993, petitioner was an attorney, practicing as Joyce Hastings, Attorney at Law. During 1993, petitioner deposited amounts totaling $107,883.48 in her general business account.

The Schedule C, Profit or Loss From Business, attached to petitioner's 1993 Form 1040 reflected gross receipts of $55,442 from Joyce Hastings, Attorney at Law.

In the notice of deficiency, respondent determined that petitioner failed to report $52,592 in gross receipts from her law practice. Respondent subsequently conceded that deposits totaling $6,100 were nontaxable transfers and that deposits totaling $1,980 were pension and annuity income that petitioner reported on her 1993 return. Respondent's revised determination is that petitioner had unreported taxable income of $44,361.48. This amount is the result of subtracting petitioner's reported law practice gross receipts ($55,442) and the amount conceded by

respondent ($8,080) from the total of petitioner's deposits into her general business account ($107,883.48).

III. Horse Activity

Petitioner has been involved with horses since she was 5 years old.  She is familiar with training, breeding, and showing horses.

In 1985, petitioner began to join saddlebred horse associations and became more involved in horse-related activity. From 1988 to 1996, petitioner belonged to 11 different organizations related to her horse activity.  Petitioner maintained a library of books and video tapes concerning training and breeding of horses and related subjects.  From 1986 to 1989, petitioner visited farriers and horse farms to determine ways to generate income from horse activity.  Based on advice she received, petitioner decided to purchase and/or breed a stud horse to generate revenue.  Petitioner intended to show the stallions, and any other horses of the same bloodline, as a means of advertisement.  Petitioner concluded that more income could be generated from selling a stallion's stud services than could be generated from showing horses.  Petitioner did not prepare any profit projections prior to commencing her horse activity.

In 1989, petitioner began her horse activity by hiring a well-qualified horse expert to acquire a horse on petitioner's behalf.  The horse so acquired was Misty, a yearling saddlebred.

In 1991, petitioner purchased Rey, a registered palomino. In 1993, petitioner purchased a broodmare, Jolly Berry, for $8,000; another broodmare, Fairy Dust, for $3,800; a third broodmare, Trigger Happy, for $2,200; and a yearling gelding, Defy, for $1,100. Petitioner made efforts to advertise her horses at shows, in magazines, and within various associations.

Petitioner maintained separate records for each horse. The records for each horse contained information regarding pedigree, pictures and information about the sire and dam, medical history, pictures of the horse, breeding information, medical information, insurance information, and training records. Petitioner also maintained numerous horse activity files. These files contained information and documents, including: Forms, horses for sale, health tips, boarding and training information, equipment information, horse-related articles, and association membership.

For the years 1989 through 1995, petitioner reported income and expenses and claimed losses from her horse activity as follows:

| Year | Income | Expenses | Losses |
|------|--------|----------|--------|
| 1989 | -0- | $7,025 | $7,025 |
| 1990 | $305 | 12,838 | 12,533 |
| 1991 | -0- | 12,994 | 12,994 |
| 1992 | 447 | 19,667 | 19,220 |
| 1993 | 10,402 | 21,531 | 11,129 |

| 1994 | -0- | 26,876 | 26,876 |
| 1995 | -0- | 31,322 | 31,322 |
| Totals | $11,154 | $132,253 | $121,099 |

In 1993, petitioner received $9,774 for pasturing horses owned by a third party and $627.50 from a horse show.

Petitioner did not maintain a separate bank account for her horse activity. Petitioner marked an "H" on each check written for a horse expenditure. Invoices or bills underlying each check expenditure were kept separately for each horse and accumulated and maintained on a monthly basis.

Petitioner maintains a trailer on the Julian, California, property that serves as her residence when she is tending the horses there.

OPINION

I. Unreported Income

The income of a sole proprietorship must be included in calculating the income and tax liabilities of the individual owning the business. Sec. 61(a)(2). The net profit or loss of such a business is generally computed on Schedule C, Profit or Loss From Business.

Taxpayers are required to maintain records sufficient to establish the existence and amount of all items reported on the tax return, including both income and deductions therefrom. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs. In the absence of books and records adequate to determine a taxpayer's proper tax

liability, the Commissioner is authorized to reconstruct income by any reasonable method which will clearly reflect income. Sec. 446(b); Commissioner v. Hansen, 360 U.S. 446, 467 (1959); Palmer v. IRS, 116 F.3d 1309, 1312 (9th Cir. 1997); Petzoldt v. Commissioner, 92 T.C. 661, 686-687 (1989).

As a general rule, in court proceedings arising in connection with examinations commenced before July 23, 1998, the Commissioner's deficiency determination is presumed correct, and the taxpayer bears the burden of proof in such cases. Sec. 7491(a)(2); Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, Pub. L. 105-277, sec. 4002(b), 112 Stat. 2681-906; Rule 142(a). As previously stated, the examination in this case began on December 17, 1997.

The Court of Appeals for the Ninth Circuit, to which appeal in the instant case would normally lie, has indicated that before the presumption of correctness will attach in an unreported income case, the determination must be supported by at least a minimal factual predicate or foundation of substantive evidence linking the taxpayer to income-generating activity or to the receipt of funds. Palmer v. IRS, supra at 1312; Rapp v. Commissioner, 774 F.2d 932, 935 (9th Cir. 1985); see also Petzoldt v. Commissioner, supra at 687-689.

Here, the record clearly links petitioner to an income-generating activity. During 1993, petitioner was an

attorney with an active law practice. On the Schedule C attached to petitioner's 1993 Form 1040, petitioner reported gross receipts of $55,442 from her law practice. Petitioner's law practice is an income-generating activity. Additionally, the record clearly links petitioner to the receipt of funds. Petitioner deposited amounts totaling $107,883.48 in her general business account during 1993. Petitioner does not dispute receiving these funds. Accordingly, respondent's reconstruction of petitioner's income, to the extent it reveals unreported income, is supported by the requisite factual predicate for placing the burden to show otherwise upon petitioner.

Respondent reconstructed petitioner's 1993 income using the bank deposits method. The use of the bank deposits method for computing unreported income has long been sanctioned by the courts. Clayton v. Commissioner, 102 T.C. 632, 645 (1994); DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992). Underlying this method is the principle that bank deposits constitute prima facie evidence of income. Clayton v. Commissioner, supra at 645; DiLeo v. Commissioner, supra at 868; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

A bank deposits analysis must generally encompass a totaling of bank deposits, an elimination from such total of any amounts derived from duplicative transfers or nontaxable sources of which the Commissioner has knowledge, and a further reduction of the

adjusted total by any deductible or offsetting expenditures of which the Commissioner is aware.  Clayton v. Commissioner, supra at 645-646; DiLeo v. Commissioner, supra at 868.  Using this method, respondent initially determined that petitioner failed to report $52,592 in gross receipts from her law practice.  After concessions, respondent's revised determination is that petitioner failed to report $44,361.48 in gross receipts from her law practice.  As previously indicated, the burden rests on petitioner to show error in respondent's determination.

Petitioner does not challenge respondent's approach or methodology in reconstructing her income by means of the bank deposits method.  Petitioner does not dispute that she received additional funds in the amounts determined by respondent.  Rather, petitioner contends that funds underlying the disputed deposits totaling $44,361.48 were from a nontaxable source.  Petitioner claims that she received money throughout 1993 as loans, transfers, and/or inheritance from her mother.  Petitioner claims that she recorded deposits made into her general business account in a handwritten deposit ledger.  Petitioner claims that she recorded the date of the deposit, the deposit number, the source of the funds deposited, and the amount of the deposit in said deposit ledger at or near the time she made each deposit.

Petitioner testified that deposits to her general business account consisted solely of money received as fees from her law practice and money received from her mother. Petitioner also testified that, when she deposited money that she received from her mother, she recorded the source of funds as a "loan from me or a loan from my mother." On brief, petitioner explained that she used the term "loan" in her deposit ledger to "describe money that did not originate as earnings" but rather "belonged to her mother".

Petitioner provided copies of canceled checks for amounts totaling $6,100. These checks show that petitioner deposited into her general business account amounts totaling $6,100 drawn from her mother's account. Based on these canceled checks, respondent conceded that an amount totaling $6,100 constituted nontaxable transfers into petitioner's account. Other than canceled checks for the amount conceded by respondent, petitioner offered no credible evidence of loans, transfers, or inheritance from her mother. We do not accept petitioner's self-serving testimony and handwritten ledger with respect to additional loans, transfers, or inheritance without corroborative evidence. Petitioner failed to overcome the presumption of correctness of respondent's determination of unreported taxable income. Allowing for concessions made by respondent, we uphold respondent's determination of unreported taxable income.

II.  Horse Activity

     A.  Statutory Framework

     Section 183(a) provides the following general rule:  "In the case of an activity engaged in by an individual * * *, if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section."  Section 183(b)(1) then goes on to prescribe that, if an activity is not engaged in for profit, a taxpayer may take those deductions which would be allowable without regard to profit motive.  Furthermore, if an activity is not engaged in for profit, section 183(b)(2) permits the taxpayer to claim those deductions which would be allowable "if such activity were engaged in for profit, but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1)."  In other words, because deductions for expenses related to an activity not engaged in for profit are generally limited to the amount of gross income from such activity, the practical effect of section 183 is to preclude a taxpayer from deducting losses incurred in such activity.

     An "activity not engaged in for profit" is defined in section 183(c) as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 [trade or business expenses] or under paragraph (1) or (2) of

section 212 [expenses incurred in the production of income]."
See also sec. 1.183-2(a), Income Tax Regs.  Deductions are
allowable under these sections only if a taxpayer's "primary
purpose and intention in engaging in the activity is to make a
profit."  Golanty v. Commissioner, 72 T.C. 411, 425 (1979), affd.
without published opinion 647 F.2d 170 (9th Cir. 1981).  The
taxpayer's expectation of a profit need not be reasonable, but
the taxpayer must possess an "'actual and honest objective of
making a profit.'"  Keanini v. Commissioner, 94 T.C. 41, 46
(1990)(quoting Dreicer v. Commissioner, 78 T.C. 642, 644-645
(1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983)).
Conversely, no deductions are allowable under section 162 or 212
for "activities which are carried on primarily as a sport, hobby,
or for recreation."  Sec. 1.183-2(a), Income Tax Regs.

The taxpayer bears the burden of establishing the requisite
profit objective.  Rule 142(a); Keanini v. Commissioner, supra at
46; Golanty v. Commissioner, supra at 426.  Whether the requisite
profit objective exists is determined by considering all the
surrounding facts and circumstances.  Keanini v. Commissioner,
supra at 46; sec. 1.183-2(b), Income Tax Regs.  Greater weight is
accorded to objective facts and circumstances than to the
taxpayer's mere statement of intent.  Sec. 1.183-2(a), Income Tax
Regs.

A nonexclusive list of factors set forth in section 1.183-2(b), Income Tax Regs., guides section 183 analysis by indicating relevant facts and circumstances for consideration:  (1) Manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) expectation that assets used in activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation.

B.  <u>Application of the Statutory Framework</u>

1.  <u>Manner in which the taxpayer carries on the activity.</u>

Petitioner claims to have drafted a business plan in 1993. As evidence of this business plan, petitioner submitted a business plan from a later year with the date "1993" handwritten on the cover sheet.  Petitioner testified that she deleted portions of the submitted plan identifying two horses that did not exist in 1993.  She testified that the submitted plan, from the beginning up to the identification of the horses, was exactly what was written in 1993.  Upon evaluation of the submitted plan, it is clear that petitioner's testimony that the same language

present in the submitted plan was also present in 1993 is false. Even the beginning sections of the submitted business plan contain language that could not have been present in 1993. For example, on page three in a section entitled "SUMMARY OF SADDLEBRED INDUSTRY", the submitted business plan references the lineage of petitioner's horse "Princess". Princess was not born until 1994. The Court is not convinced that any portion of this submitted business plan was drafted before or during 1993. It is therefore doubtful that petitioner had any business plan in 1993.

Other than her claim to have drafted a business plan, petitioner does not claim to have made any changes during 1993 from the manner in which she maintained books and records for the years at issue in Hastings v. Commissioner, T.C. Memo. 1999-167, where we held that petitioner's horse activity was not engaged in for profit.

Petitioner's attempts to improve profitability through changes in operating methods and techniques can only be termed minimal. While attempting to enter into a deal to breed one of her horses with Andalusians, petitioner pastured Andalusians owned by a third party, thus producing gross receipts of $9,774. Compared to petitioner's reported gross receipts of only $752 from horse activity for the years 1989 to 1992, these pasturing receipts were substantial. Despite this potential for income, petitioner declined to continue pasturing horses after the

attempted breeding deal did not materialize as planned.  As in prior years, petitioner made no attempt to cut her overhead or losses by ridding herself of unproductive horses or limiting her acquisitions to horses that furthered a profit-making objective. Rather, in 1993, petitioner purchased three broodmares and a gelding even though these horses could not produce stud fees.

Based on the above considerations, petitioner did not operate her horse activity in a businesslike manner in 1993. This factor fails to indicate a profit objective.

2.   The expertise of the taxpayer or his advisers.

In considering this factor, the focus is upon expertise and preparation with regard to the economic aspects of the particular activity, and failure to possess or obtain expertise in this area will not be excused by study of other aspects of the activity or by general business acumen.  See, e.g., Golanty v. Commissioner, 72 T.C. at 432.

Petitioner is bereft of the requisite economic expertise. Although petitioner consulted experts on how to generate income from horse activities before she began her horse activity, she does not claim to have consulted with any economic or financial experts during her operations, even when faced with mounting losses.  This factor does not indicate a profit objective.

3.  <u>The time and effort expended by the taxpayer in carrying on the activity.</u>

Respondent argues that petitioner could not have devoted enough time and effort to the horse activity to make it profitable in 1993.  As support for this claim, respondent relies on the facts that petitioner maintained her law practice in Huntington Beach, California, during the entire 1993 taxable year and that the driving distance from petitioner's home in Huntington Beach, California, to the location of her horse activity in Julian, California, is approximately 120 miles.  From these facts, respondent argues that petitioner would only have been able to devote any substantial time and effort to her horse activity on an occasional weekend or holiday.  Petitioner claims, however, to have spent a significant amount of time conducting her horse activity in 1993.  She claims that until June 1993, she spent 4 days per week conducting horse activity in Julian, California.  Petitioner also claims that, starting at the end of June 1993, she spent 6 days per week conducting horse activity in Julian, California.  Petitioner also testified that she purchased a trailer in 1993, presumably to serve as her residence while conducting horse activity in Julian, California.  Petitioner also claims that she began to scale back her law practice during 1993 due to her age, the health of her mother, and the increase in her horse activity.  Petitioner offered no corroborating evidence to

support any of these claims. The time she claims to have spent conducting her horse activity is not inconsistent with the amount of time one might expect from someone conducting a horse activity as a hobby during the process of retirement. This factor is neutral in the determination of whether petitioner had a profit objective.

4. Expectation that assets used in activity may appreciate in value.

Petitioner provided no evidence as to the value of her horses in 1993 nor any evidence showing that her horses were expected to appreciate in value. Petitioner claimed that Defy, the gelding she purchased in 1993, would have been worth approximately $20,000 if he had "hit". Petitioner introduced no evidence to support this assertion. Petitioner eventually sold Defy for his acquisition price. Defy did not appreciate in value, and petitioner did not recoup any money she spent for his upkeep. This factor does not support petitioner's claim of profit objective.

5. The success of the taxpayer in carrying on other similar or dissimilar activities.

Petitioner is an attorney, with an active and profitable law practice, Joyce Hastings, Attorney at Law. Petitioner's law practice is not similar to her horse activity. Petitioner's experiences in law practice simply do not translate meaningfully

into her horse activity.  This factor is neutral as to whether petitioner had the requisite profit objective in conducting her horse activity.

6.  <u>The taxpayer's history of income or losses with respect to the activity.</u>

Petitioner's horse activity did not generate a profit during any of the years from the inception of her horse activity through the year in issue.  We have previously held that the startup phase of an American saddlebred horse breeding activity is 5 to 10 years.  <u>Engdahl v. Commissioner</u>, 72 T.C. 659, 669 (1979).  The year in issue falls within this startup phase.  Petitioner reported increasing losses from 1989 to 1995.  During that period, 1993 was the only year in which petitioner's losses declined from the previous year.  This decline was the result of petitioner's earning pasturing income of $9,774 and horse show income of $627.50.  Without the pasturing income, petitioner's losses would have increased in 1993 from the previous year, as was the general pattern for petitioner's horse activity.  From 1989 to 1995, petitioner reported losses in excess of $100,000.  In spite of these losses, petitioner never considered abandoning the activity.  Petitioner has not demonstrated that future horse activity income will be sufficient to generate an overall profit

for her horse activity.  Since petitioner's horse activity was in the startup phase for the year in issue, this factor is neutral as to whether petitioner had a profit objective.

7.  <u>The amount of occasional profits, if any, which are earned.</u>

As indicated above, petitioner has earned no profits from her horse activity, so this factor does not support a profit objective.

8.  <u>The financial status of the taxpayer.</u>

Petitioner used the losses from the horse activity to reduce her taxable income by offsetting income from her law practice. Petitioner claims to have been in the process of reducing the size of her law practice during 1993.  Due to her underreporting of income from the law practice, as discussed above, it is unclear whether petitioner actually reduced the size of her law practice in 1993.  Petitioner reported income from her law practice that was almost completely offset by losses claimed from the horse activity.  This factor does not indicate a profit objective.

9.  <u>Elements of personal pleasure or recreation.</u>

Petitioner derived substantial personal pleasure from her horse activity.  We have no doubt that petitioner worked hard in

the horse activity.  Even a hobby, however, can require considerable work.  With regard to a profit objective, this factor is neutral.

In summary, the circumstances of this case, when considered within the framework of the nine factors above, indicate that petitioner did not possess the requisite intent to profit from her horse activity.  Petitioner therefore is subject to the restrictions set forth in section 183 and improperly deducted losses from her horse activity.

III.  Section 6651(a)(1) Addition to Tax

Respondent determined that petitioner is liable for an addition to tax under section 6651(a)(1) for failure timely to file her 1993 Federal income tax return.  Section 6651(a)(1) provides for an addition to tax of 5 percent of the tax required to be shown on the return for each month or fraction thereof for which there is a failure to file, the aggregate not to exceed 25 percent.  In order to avoid the imposition of the addition to tax, the taxpayer bears the burden of proving that the failure did not result from willful neglect and that the failure was due to reasonable cause.  Sec. 6651(a)(1); United States v. Boyle, 469 U.S. 241, 245 (1985).

Respondent extended the due date for petitioner's 1993 Federal income tax return from April 15 to August 15, 1994. Petitioner filed her 1993 income tax return on February 16, 1996.

Petitioner has not offered any explanation for her delinquency. Petitioner has engaged in a lengthy and consistent pattern of failing timely to file income tax returns.  See <u>Hastings v. Commissioner</u>, T.C. Memo. 1999-167.  We therefore hold that petitioner is liable for the section 6651(a)(1) addition to tax for the 1993 taxable year.

IV.  <u>Section 6662(a) Accuracy-Related Penalty</u>

Respondent determined that petitioner is liable for the accuracy-related penalty under section 6662(a) for 1993. Subsection (a) of section 6662 imposes a penalty in an amount equal to 20 percent of the portion of any underpayment of tax attributable to causes specified in subsection (b).  Subsection (b) of section 6662 then provides that among the causes justifying imposition of the penalty are:  (1) Negligence or disregard of rules or regulations and (2) any substantial understatement of tax.

"Negligence" is "any failure to make a reasonable attempt to comply with the provisions of this title", and "disregard" is "any careless, reckless, or intentional disregard."  Sec. 6662(c).  An understatement is equal to the excess of the amount of tax required to be shown on the return less the amount of tax shown on the return.  Sec. 6662(d)(2)(A).  In the case of an

individual, an understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1)(A).

An understatement is reduced to the extent attributable to an item:  (1) For which there existed substantial authority for the taxpayer's treatment thereof, or (2) with respect to which relevant facts were adequately disclosed in the return or in a statement attached thereto and there existed a reasonable basis for the taxpayer's treatment of the item.  Sec. 6662(d)(2)(B).

The accuracy-related penalty under section 6662(a) does not apply to any portion of an underpayment if it is shown that there was reasonable cause for such portion of the underpayment and that the taxpayer acted in good faith with respect to such portion.  Sec. 6664(c)(1); Jelle v. Commissioner, 116 T.C. 63, 72 (2001).  In general, the determination of whether a taxpayer acted with reasonable cause and in good faith depends upon the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  The crucial factor is the extent of the taxpayer's effort to assess the proper tax liability.  Id.

Petitioner bears the burden of proving that respondent's determination is erroneous.  Rule 142(a); Jelle v. Commissioner, supra at 72.

Petitioner has offered no explanation or argument on this issue. Petitioner has engaged in a lengthy and consistent pattern of underreporting income and of claiming deductions for losses sustained in an activity not engaged in for profit. See Hastings v. Commissioner, supra. We therefore hold that petitioner is liable for the section 6662(a) accuracy-related penalty for the 1993 taxable year.

To reflect the foregoing and respondent's concessions,

Decision will be entered

under Rule 155.